IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALI ABDUL HAKEEM,                       :
                                        :
        Plaintiff                       :
                                        :        3:CV-03-0098
        v.                              :
                                        :        JUDGE VANASKIE
AHMED SALAM, et al.,                    :
                                        :
        Defendants                      :

## MEMORANDUM

_____This is a combined constitutional and common law tort action brought pro se by Ali

Abdul Hakeem ("Hakeem") to recover damages for alleged injuries purportedly sustained as

a consequence of the improper insertion of a tracheal tube during surgery.  Hakeem has

named as defendants Evangelical Community Hospital ("Evangelical"), the institution where

the surgery was performed; Ahmed S. Abdel-Salam, M.D. ("Dr. Salam"), a Medical Officer

at the United States Penitentiary in Lewisburg ("USP-Lewisburg"), the institution where

Hakeem was incarcerated at the time of the incidents in question; William Bogler, a

Physician's Assistant ("P.A.") employed at USP-Lewisburg; and the United States of

America.[1]  Plaintiff seeks recovery against Evangelical on a theory of negligence in relation

to the surgery.  He has asserted Eighth Amendment deliberate indifference to serious

medical needs claims against Defendants Salam and Bogler in relation to their alleged

---

[1]  Collectively, Dr. Salam, P.A. Bogler, and the United States shall be referred to as
the "federal Defendants."

failure to address his complaints of severe throat pain following the surgery. Finally, he seeks recovery against the United States for injuries sustained as a result of the alleged negligence of prison healthcare officials in failing to treat his complaints of severe throat pain following the surgery, invoking the remedial provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.[2]

In a comprehensive Report and Recommendation filed on July 18, 2006 (Dkt. Entry 155), the Magistrate Judge to whom this matter had been referred proposed that the motion for summary judgment filed on behalf of Evangelical be granted, but that the motion for summary judgment filed on behalf of the federal Defendants be denied. He also recommended that Hakeem's motion for appointment of a medical expert and attorney-investigator be denied.

Both Hakeem and the federal Defendants have objected to the Report and Recommendation, with Hakeem arguing that Evangelical is not entitled to judgment in its favor and that he is entitled to appointment of counsel and an expert witness, and the federal Defendants asserting that they are entitled to judgment in their favor. Having carefully reviewed the record de novo, I find that Hakeem is not entitled to appointment of an attorney or an expert witness; Evangelical is entitled to judgment in its favor; and the

---

[2] Hakeem had also named as Defendants the Warden of USP-Lewisburg and one of its officers, Captain Ey. They were dismissed from this action by Order filed on September 30, 2004. (Dkt. Entry 63.)

federal Defendants are also entitled to judgment in their favor.  Accordingly Hakeem's objections to the Report and Recommendation will be overruled, and the federal Defendants' objections will be sustained.

## I. BACKGROUND

The chronology of events providing context for this action is thoroughly presented in the Report and Recommendation, and will be stated only briefly here.  In the summer of 2000, Hakeem was examined by Dr. Salam on a complaint of a lesion on Hakeem's right breast.  (Salam Decl., Dkt. Entry 134-3, ¶ 4.)  Dr. Salam diagnosed gynecomastia.  (Id.)  Following a surgical consultation, a bilateral subcutaneous mastectomy was ordered.  (Id. ¶ 7.)

On March 19, 2001, Hakeem underwent the recommended surgical procedure at Evangelical.  The surgery was performed under general anesthesia.  Prior to the surgery, Hakeem signed a "Consent to Anesthesia" form which, in part, provided:

> Although modern anesthesia is relatively safe, every type of pain relief and anesthesia has certain risks and hazards which are known by those administering and/or supervising your anesthesia.  Unexpected reactions and complications may occur, however, and may vary between patients even where their medical conditions appear to be similar.  The anesthesiologist, his associates or assistants recognize that these risks can be substantial and can occur regardless of the experience, precautions, care and skill of the individual administering the anesthesia.  These risks include but are not limited to dry throat, sore throat, broken teeth, vomiting, short memory lapse, allergic reactions, pneumonia, inflammation of blood vessels, headache, backache, nerve injury, paralysis or loss of function of a limb, damage to or failure of the heart, lungs, liver, kidneys and brain, as well as death.

3

(Ex. D to Evangelical S.J. Mot., Dkt. Entry 129-6, at 15.)  As part of the anesthesia for the surgical procedure, an endotracheal tube was inserted into Hakeem's throat for breathing purposes.  (Salam Decl. ¶ 3.)

Following the surgical procedure, Hakeem was returned to USP-Lewisburg.  At that time, Tylenol with Codeine was prescribed for pain.  (Ex. 3 to Salam Decl., Dkt. Entry 134-4, at R.173.)

Upon his return to USP-Lewisburg, plaintiff was seen by Physician Assistant Ferdinand Alama.  (Ex. 1 to Salam Decl., Dkt. Entry 134-4, at R.102.)  Alama's record does not mention any complaint of a sore throat.

It appears that Hakeem was first seen by Dr. Salam at about 9:30 a.m. on March 21, 2001, less than 48 hours after the surgery was performed.  Dr. Salam's entry for that date does not mention any complaint of a sore throat.  (Id. at R.100.)  Hakeem, however, insists that he reported severe throat pain to Dr. Salam, and that Dr. Salam, without examining Hakeem's throat, said that the pain was an expected effect of the insertion of the endotracheal tube and would subside within a few weeks.

The next entry in Hakeem's "Chronological Record of Medical Care," attached as Exhibit 1 to the Salam Declaration, concerns Dr. Salam's examination of Plaintiff on March 23, 2001, at 8:00 a.m. (Dkt. Entry 134-3, at R.99.)  Hakeem asserts that he again complained of severe throat pain, but that Dr. Salam refused to examine him for this

4

complaint.

Significantly, however, Hakeem was also examined by the physician who performed

the surgery, Dr. Morgan, on March 23, 2001. Dr. Morgan did examine the throat area, and

diagnosed uvulitis, i.e., inflammation of the uvula.[3] The surgeon's entry does not suggest

that the condition warranted immediate medical attention. At that time, Hakeem's

prescription for Tylenol with Codeine was renewed and a consultation with an Ear, Nose,

and Throat ("ENT") specialist was recommended. (Ex. 2 to Salam Decl., Dkt. Entry 134-4,

at R.163.) An entry on the same page of the medical record, under the signature of Dr.

Anthony Bussanich and dated March 26, 2001, recommended an ENT consult for a granule

on the uvula. (Id.)[4]

The next entry in the Chronological Record is dated March 26, 2001, and bears the

signatures of both Defendant Bogler and Dr. Bussanich. Although difficult to read, the entry

appears to state that Hakeem was to be referred to a dentist to evaluate granular tissue on

the uvula, and if the dentist was unable to treat the condition, to refer the matter to an ENT

specialist. (Ex. 1 to Salam Decl., Dkt. Entry 134-3, at R.98.)

A "Consultation Sheet" dated March 28, 2001 and signed by Dr. Bussanich states:

---

[3]The uvula is the "pendent fleshy lobe in the middle of the posterior border of the soft
palate." Merriam-Webster's Medical Dictionary, available at
http://dictionary.reference.com/browse/uvula (last visited Mar. 12, 2007).

[4]According to Stedman's Medical Dictionary 742 (26th ed. 1995), a granule on the
uvula suggests an ulcer or inflamed tissue surface."

> [Hakeem] complains of a mass on his uvula and ho[a]rseness secondary to endotracheal tube placement during his recent surgery (3-19-01). He was evaluated by the institution dental officer who recommended referral to ENT.

(Ex. 2 to Salam Decl., Dkt. Entry 134-4, at R.164.)  Dr. Bussanich directed that Hakeem be seen by an ENT specialist no later than April 2001. (Id.)  At that time, Hakeem was still taking Tylenol with Codeine.  The Consultation Sheet indicates that the requesting health care providers were Dr. Bussanich and P.A. Bogler. (Id.)

For reasons not presented in the record, the ENT consult did not occur until May 1, 2001.  Between March 28 and May 1, 2001, however, Hakeem was seen by USP-Lewisburg healthcare professionals on at least six occasions.  Specifically, on April 7, 2001, he presented to the Health Services Unit ("HSU") at USP-Lewisburg with complaints of breast pain.  The entry for that date is signed by P.A. Luis Ramirez and Dr. Salam.  (Ex. 1 to Salam Decl., Dkt. Entry 134-3, at R.98.)  The entry made by the P.A. indicated that Hakeem was to return to be re-evaluated by a physician on Monday, April 9, 2001.  (Id.)

Hakeem, however, did not return to the HSU until April 17, 2001.  (Salam Decl. ¶ 10.)  At that time, he complained of nasal congestion.  There is no indication that either Dr. Salam or P.A. Bogler was involved in the April 17, 2001, visit.

Hakeem next reported to the HSU on April 22, 2001.  The entry for this date, signed by P.A. Mark Peoria and Dr. Bussanich, indicates that Hakeem complained of sharp pain coming through his chest.  (Ex. 1 to Salam Decl., Dkt. Entry 134-3, at R.96.)  Again,

6

however, there is no report of a sore throat.

Two days later, Hakeem again reported to the HSU and was examined by a P.A.  The entry for this day, which Dr. Salam reviewed, concerns continued complaints of nasal congestion, with no mention of a sore throat.  (Id. )  Hakeem does not deny that during the month of April 2001, he appeared at the HSU without complaints of throat pain, explaining that he obtained relief from pain medication that had been prescribed.  (Hakeem's "Statement of Material Records Facts," filed on September 11, 2006, Dkt. Entry 175, at 5.)

On April 27, 2001, Hakeem was examined by Dr. Bussanich.  In addition to complaints of pain in both breasts, Hakeem reported that he was still having throat pain.  Dr. Bussanich noted an elongated uvula, and once again prescribed Tylenol with Codeine.  (Ex. 1 to Salam Decl., Dkt. Entry 134-3, at R.94-95.)

On May 1, 2001, Hakeem was examined by an ENT specialist at the Lewisburg Medical Park.  The ENT specialist, Dr. Hobbs, reported his findings in a letter to Dr. Bussanich dated May 3, 2001, which provides:

> I saw [Hakeem] in my clinic on 5/1/01.  He had a history of endotracheal tube intubation one month ago and woke with hoarseness and irritation in the throat especially on the left side.
>
> A flexible laryngoscopy was performed.  He was noted to have swelling of his false vocal chords.  There was no evidence of any lesions or granulation tissue.
>
> At this time, I have recommended Decadron elixir gargles 5 cc gargle and expectorate q.i.d. for the next 10 days along with reflux precaution and

Prevacid 30 mg q.i.d.  He was to followup in our clinic in four to six weeks if he is not improved.

(Ex. 5 to Salam Decl., Dkt. Entry 134-4, at R.177.)

Following the ENT consultation Hakeem continued to be treated at USP-Lewisburg for various complaints by several healthcare providers, including Dr. Salam.  His complaints occasionally included throat discomfort.  For example, on May 25, 2001, Hakeem was examined by Dr. Salam, who ordered that the prescription for Decadron elixir and Prevacid be continued.  In addition, Tylenol with Codeine was prescribed for an additional three days.  (Ex. 1 to Salam Decl., Dkt. Entry 134-3, at R.88.)

On June 28, 2001, Hakeem was transferred to the United States Penitentiary at Allenwood, Pennsylvania.  (Salam Decl. ¶ 18.)  He continued to present with complaints of hoarseness and throat discomfort, for which he received treatment.  He was seen again by an ENT specialist on July 19, 2001 who, like Dr. Hobbs, found swelling of the false vocal chords.  (Ex. 2 to Salam Decl., Dkt. Entry 134-4, at R.166.)  Prednazone, among other things, was prescribed.  (Id. at R.167).  Thereafter, Hakeem continued to voice occasional complaints of hoarseness and throat pain.  Other consultations were directed, and medications were prescribed.  (Salam Decl. ¶¶ 21-26.)

After exhausting appropriate administrative remedies, Hakeem brought this action on January 14, 2004.  He did not seek leave to proceed in forma pauperis under 28 U.S.C. § 1915, but instead paid the full filing fee.

The complaint alleges negligence in connection with the surgical procedure

performed at Evangelical, as well as deliberate indifference of Dr. Salaam and P.A. Bogler in relation to Hakeem's complaints of throat pain following the surgery. In addition, the complaint asserts that USP-Lewisburg medical staff were negligent in how they responded to his reports of throat discomfort.

Evangelical responded to the complaint by moving for dismissal from the action, and the federal Defendants moved for summary judgment. This first round of dispositive motions was addressed in a Report and Recommendation filed on February 25, 2004, (Dkt. Entry 47), and resolved by this Court's Order of September 30, 2004. (Dkt. Entry 63.) As a result of the September 30, 2004 ruling, the negligence claims against Evangelical and the United States remained, as well as the deliberate indifference claims against Dr. Salaam and P.A. Bogler.[5]

## II. DISCUSSION

Where, as here, objections to the Report and Recommendation of a Magistrate Judge on a dispositive motion have been filed, this Court must review the record de novo. See 28

---

[5] In deciding not to grant summary judgment on the deliberate indifference claim, I found it significant that no discovery had yet occurred, Hakeem had asserted that his complaints of throat pain had been ignored completely, and that the delay in Hakeem seeing an ENT had not been explained. Summary judgment on the negligence claim asserted against the United States under the FTCA was denied because, viewing the record in the light most favorable to Hakeem at that time, there appeared to be a complete failure of care or unnecessary delay in treatment, for which expert witness testimony may be unnecessary. These conclusions are now to be reexamined after the parties have had an opportunity to engage in discovery.

U.S.C. § 636(b)(1).  The issue before this Court is whether there is a genuine dispute of any fact material to the substantive issues presented on the plaintiff's claims and the defenses thereto.  See FED. R. CIV. P. 56(c).  This dispositive question will be addressed separately for each of the pending summary judgment motions.

## A. Evangelical's Motion

Hakeem claims that his throat was damaged by the improper placement of an endotracheal tube during the course of the surgery performed at Evangelical on March 19, 2001.  Hakeem, however, has not supported his claim of negligence against Evangelical with the report of an expert witness.  Evangelical, however, has submitted the report of Dr. John B. Houston, an anesthesiologist with the Geisinger Health System.  He has opined that sore throat and injury to pharyngeal tissue is a known complication to tracheal intubation and may also occur as a complication of anesthesia in the absence of endotracheal intubation.  (Ex. C to Evangelical's S. J. Mot., Dkt. Entry 129-5, at 2.)  He also opined that the anesthetic care of Hakeem was appropriate and within the applicable standard of care.

Based upon the absence of an expert witness supporting Hakeem's claim of negligence, the Magistrate Judge recommended that Evangelical's summary judgment motion be granted.  Hakeem objects to this conclusion, claiming that expert testimony is unnecessary.  He also asserts that he may be able to support his claim by testimony from the healthcare professionals who attended to him following his surgery.

10

It is well-settled that, unless "the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons," expert witness testimony is required to support a claim of medical malpractice.  Miville v. Abington Mem'l Hosp., 377 F. Supp. 2d 488, 491 n. 2 (E.D. Pa. 2005).  Placement of an endotracheal tube is not a matter that "is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons."  Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997).  Moreover, Dr. Houston opined that injury to oral and pharyngeal tissue is a known complication of the use of an endotracheal tube.  Under these circumstances, Hakeem cannot rest upon the mere fact of injury, but instead must show that the procedures followed in his case fell below the applicable standard of care.  Having failed to present any expert witness to contradict the conclusions of Dr. Houston, Hakeem cannot defeat Evangelical's summary judgment motion.  See Dusenbery v. United States, No. 06-2021, 2006 WL 3724281, at *2 (3d Cir. Dec. 19, 2006).

Hakeem asserts that summary judgment should not be granted at this stage of the case because he was erroneously denied appointment of counsel and an expert witness.  He also claims that he could have supported his claim had he been allowed to procure by subpoena the testimony of health care professionals who treated him following his surgery.  These contentions lack merit.

11

There is no authority for court appointment of an expert witness in a civil action such as this one. See Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir. 1987). Furthermore, even for an inmate who is proceeding in forma pauperis pursuant to 28 U.S.C. §1915, a federal court is not authorized to waive or pay witness fees required to effect service of a subpoena. See Malik v. Lavalley, 994 F.2d 90, 90 (2d Cir. 1993) (per curiam); Tedder v. Odel, 890 F.2d 210, 211-12 (9th Cir. 1989) (per curiam); Vega v. Lantz, No. 3:04-CV-1215 (DFM), 2006 WL 3826690, at *2 (D. Conn. Nov. 6, 2006); Badman v. Stark, 139 F.R.D. 601, 604-06 (M.D. Pa. 1991). Nor does the fact that a malpractice claim generally requires expert testimony to enable the complaining party to avoid summary judgment require that counsel be appointed to represent the complaining party. See Dusenbery, supra, 2006 WL 3724281, at *2; Simpson v. Fed. Bureau of Prisons, No. 3:CV-02-2313, 2005 WL 2387631, at *4. (M.D. Pa. Sept. 28, 2005). In short, there was no requirement that counsel and/or an expert witness be supplied for Hakeem in this case.

Finally, Hakeem's claim that he would be able to present supportive evidence from attending healthcare professionals if he were allowed to subpoena them does not defeat an otherwise properly supported summary judgment motion. Rule 56(e) required Hakeem to obtain and present such evidence before the summary judgment motion became ripe. Dusenbery, 2006 WL 3724281, at *2. Accordingly, the Report and Recommendation will be adopted to the extent that it recommends denial of Hakeem's motion for appointment of an

12

attorney and/or expert witness. It will also be adopted to the extent it recommends granting Evangelical's summary judgment motion.

### B. Federal Defendants' Motion

#### 1. Claims of Deliberate Indifference to Serious Medical Needs

Hakeem's claim of deliberate indifference to his throat discomfort concerns only Dr. Salam and P.A. Bogler, and is premised upon his assertion that they completely ignored his complaints. A careful review of the record, however, compels the conclusion that no rational trier of fact could find in favor of Hakeem on this claim.

"'Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners are sufficiently egregious to rise to the level of a constitutional violation.'" Spruill v.Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napolean, 897 F.2d 103, 108-09 (3d Cir. 1990). Deliberate indifference may be found where the defendant intentionally refuses to provide treatment, delays treatment, or prevents an inmate from receiving treatment for a serious medical need for non-medical reasons. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Viewed in a light most favorable to Hakeem, the evidence against Dr. Salam is that, when Hakeem complained of severe throat pain immediately following the surgery, Dr. Salam did not examine Hakeem's throat. Instead, he simply informed Hakeem that a sore throat was a normal incident of endotracheal intubation and the pain would resolve in a few

13

weeks.  Dr. Houston's report supports the conclusion that Dr. Salam's reaction was consistent with medical facts.  It is undisputed that sore throat is indeed a common complication of endotracheal intubation.

Hakeem argues, however, that deliberate indifference may be inferred because Dr. Salam did not examine his throat or otherwise prescribe any treatment.  This claim must be examined in light of the medical records that show the following;

- Hakeem was prescribed Tylenol with Codeine, a significant pain reliever, immediately following the surgery.

- Hakeem acknowledged that the Tylenol with Codeine provided relief from the severe throat pain.[6]

- The surgeon's diagnosis of uvulitis on March 23, 2001, four days after the surgery, did not suggest the need for any immediate treatment or change in prescriptions.

- By no later than March 28, 2001, a consultation with an ENT specialist was

---

[6] In his "Statement of Material Medical Records of Facts," filed on September 11, 2006 (Dkt. Entry 175, at 5), Hakeem stated:

My throat pain intensity fluctuated depending what time My visit to the sick call[.]  I was in the Hole at[]this time so I would receive my medicin[e] between 6:00 am till 7:30 am go to see Nurse or P.A. around 9-11:00 in the morning[.]  [Q]uite naturally I would not feel "NO Pain[.]"  I also had several refills and I was given regular prescription of Tylenol.

ordered for no later than April 2001, also indicating the absence of any need for immediate treatment.

- Hakeem has presented no evidence that Dr. Salam in some way delayed or was responsible for the delay in Hakeem being examined by an ENT specialist.

- The ENT consult was ordered by Dr. Bussanich, and Hakeem voices no complaint that Dr. Bussanich failed to act with appropriate alacrity in having the consultation performed.

- Hakeem presented himself to the USP-Lewisburg HSU on April 7, 17, 22, and 24, 2001, without complaining of a sore throat.  On each occasion, the complaints that Hakeem did present were addressed by changes in Hakeem's treatment regimen.

- When Hakeem did complain of persistent throat pain on April 27, 2001, Dr. Bussanich observed an elongated uvula and prescribed Tylenol with Codeine. As noted above, Hakeem acknowledged that he obtained relief from throat pain with the Tylenol with Codeine, and he has asserted no claim that Dr. Bussanich was deliberately indifferent to this particular medical need.

- The ENT specialist who examined Hakeem on May 1, 2001, did not suggest that Hakeem was confronted with an urgent medical problem, but instead

15

directed that Hakeem return in 4 to 6 weeks if the problem persisted.

At best, the evidence supports an inference that Hakeem's throat complaints were not addressed for a period of four days, from March 19 to March 23, 2001, and that Dr. Salam was one of the healthcare providers who saw him during this time frame. Hakeem's complaints of sore throat pain, accepted as true for this summary judgment motion, occurred immediately after significant surgery, and he was receiving medical care during this period of time, including prescription of a narcotic pain reliever. Dr. Salam had limited contact with Plaintiff after March 23, 2001. Significantly, however, Hakeem continued to receive healthcare treatment at USP-Lewisburg by a number of healthcare professionals through the end of April 2001, and thereafter. Hakeem does not claim that the other healthcare providers acted with deliberate indifference. Nor has Hakeem suggested how his course of treatment would have changed had Dr. Salam examined his throat before Dr. Morgan did so on March 23, 2001.

As noted above, Dr. Salam had a reasonable basis for concluding that the initial complaints of throat pain were an expected incident of the type of invasive procedure involved in this matter. "[M]edical personnel are afforded considerable latitude in the diagnosis and treatment of prisoners' ailments." Anderson v. Snyder, 187 Fed. Appx. 217, 218 (3d Cir. 2006). Dr. Salam's reaction to Hakeem's initial complaints of sore throat pain fall within this area of considerable latitude.

16

Moreover, Hakeem has not presented any evidence that the failure to examine his throat and observe the uvulitis seen by Dr. Morgan on March 23, 2001 adversely affected his throat condition. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (internal quotation marks and citation omitted), abrogation on other grounds recognized by Reece v. Groose, 60 F.3d 487 (8th Cir. 1995). Only if the delay in diagnosis and treatment caused substantial harm may deliberate indifference be shown. See Haley v. Feinerman, 168 Fed. Appx. 113, 116-17 (7th Cir. 2006); Freeman v. Frimpong, No. 3:04-CV-1546, 2007 WL 570160, at *5-6 (M.D. Pa. Feb. 15, 2007); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D. N.C. 2005).

In this case, Hakeem has presented no evidence that he suffered substantial harm by the absence of a diagnosis of uvulitis before March 23, 2001. Indeed, the general surgeon who made the diagnosis did not call for emergency medical care at that time. Hakeem has presented no evidence that his condition would have improved had he received in late March 2001 the treatment ordered by the ENT specialist on May 1, 2001. In this regard, it is noteworthy that the ENT specialist found no evidence of lesions or granules when he

17

examined Plaintiff's throat on May 1, 2001.[7]

In denying the first motion for summary judgment on this claim, I found it significant that Hakeem had asserted that his complaints of severe pain were ignored and that he had been referred to a prison dentist before being sent to an ENT Specialist. I also found it significant that the record was silent as to the reason for the delay in being seen by the ENT specialist. At that time, however, no discovery had been allowed. I believed it appropriate to accord the pro se litigant an opportunity to develop an evidentiary basis for his claim. He has failed to do so. The fact that Hakeem was sent to a prison dentist only serves to show that one possible treatment option was explored. Moreover, it does not appear that the referral to the prison dentist delayed in any way Hakeem's examination by the ENT specialist. In addition, the record now makes clear that Dr. Salam's interaction with Hakeem during the period of time in question was sporadic at best, and that Hakeem received constant attention from USP-Lewisburg healthcare professionals, against whom he voices no complaints. Under these circumstances, Dr. Salam is entitled to judgment in his favor. See Darden v. Laurie, 193 Fed. Appx. 169, 171 (3d Cir. 2006) (claim of deliberate indifference

---

[7] Throughout the course of this proceeding Hakeem has asserted that his throat was "torn" during the endotracheal intubation. As observed by the federal Defendants, however, there is no evidence to support this bald assertion. Hakeem has also claimed that the surgeon, upon examining his throat, exclaimed that Hakeem should be taken immediately to an outside emergency hospital. Once again, there is no competent evidence to support this assertion, and the medical records contradict this claim.

cannot be maintained even though plaintiff asserted that he did not receive treatment until the fourth day after his injury where that fact did not show a deliberate disregard to an excessive risk to the inmate's health or safety, and the record showed that plaintiff received constant care and attention, as well as appropriate pain medication, following the alleged delay in treatment).

The deliberate indifference claim against P.A. Bogler rests on even less evidence. Hakeem asserts that Bogler, like Dr. Salam, ignored his initial complaints of throat pain. As in the case of Dr. Salam, however, there is no evidence of any substantial harm as a result of the delay in diagnosis and examination by the ENT specialist. Moreover, Bogler's interaction with Hakeem was even less frequent than Dr. Salam's. Accordingly, no rational trier of fact could conclude that Bogler was deliberately indifferent to a serious medical need, and he, too, is entitled to summary judgment.

## 2. The FTCA Negligence Claim

The record reflects that Hakeem received constant medical care and attention between the date of his surgery and his transfer from USP-Lewisburg. Hakeem has presented no expert witness to opine that the care he received during this period of time fell below the objective standard of professional care appropriate under the circumstances. Absent such expert evidence, Hakeem cannot sustain a medical malpractice claim against the United States.

19

It is worth emphasizing that a careful review of the record shows that this is not a case of a complete lack of attention to a particular inmate. Hakeem received constant care. In order to recover on a negligence claim, Hakeem must show that the care fell below an objective standard of professional competence. The only way he can do so is by way of an expert witness, and the absence of such expert testimony compels entry of judgment in favor of the United States on the medical malpractice claim asserted against it.

III.   **CONCLUSION**

For the reasons set forth above, the Report and Recommendation will be adopted to the extend that it recommends denying Plaintiff's motion for appointment of an attorney/investigator or expert witness and granting Evangelical's summary judgment motion. The Report and Recommendation will not be adopted insofar as it proposes denial of the federal Defendants' summary judgment motion. Instead, a careful review of the entire record compels the conclusion that the federal Defendants are also entitled to judgment in their favor. An appropriate Order follows.

**s/ Thomas I. Vanaskie**
United States District Judge
Middle District of Pennsylvania

20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALI ABDUL HAKEEM,                          :
                                           :
        Plaintiff                          :
                                           :        3:CV-03-0098
   v.                                      :
                                           :        JUDGE VANASKIE
AHMED SALAM, et al.,                       :
                                           :
        Defendants                         :

## ORDER

NOW, THIS 13th DAY OF MARCH, 2007, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. To the extent that it recommends denying Plaintiff's motion for appointment of a medical expert and attorney/investigator and granting Evangelical Community Hospital's Motion for Summary Judgment, the Report and Recommendation (Dkt. Entry 155) is ADOPTED

2. The federal Defendants' Objections to the Report and Recommendation are SUSTAINED.

3. Plaintiff's Objections to the Report and Recommendation are OVERRULED.

4. Evangelical Community Hospital's Motion for Summary Judgment (Dkt. Entry 129) is GRANTED.

5. The federal Defendants' Motion for Summary Judgment (Dkt. Entry 132) is GRANTED.

6. Plaintiff's motion for appointment of a medical expert and attorney/investigator (Dkt. Entry 144) is **DENIED.**

7. The Clerk of Court is directed to enter judgment in favor of the Defendants and to mark this matter **CLOSED.**

**s/ Thomas I. Vanaskie**
United States District Judge
Middle District of Pennsylvania

2